IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| *In re Zydus Unsolicited Fax Litigation* | ) <br> ) Case No. 13-cv-3105 <br> ) <br> ) Hon. Sara L. Ellis <br> ) |

**PLAINTIFF'S MOTION FOR
<u>ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD</u>**

<u>Submitted by:</u>

Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
S<small>IPRUT</small> PC
17 N. State Street
Suite 1600
Chicago, Illinois  60602
Phone: 312.236.0000
Fax: 312.241.1260
www.siprut.com

***Counsel for Plaintiff and the
Settlement Class***

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................1

II. PROCEDURAL HISTORY....................................................................................1

III. CLASS COUNSEL'S FEE REQUEST ...................................................................5

    A. Class Counsel Performed Substantial Work on Behalf of the Class ........................5

    B. The Percentage Of The Recovery Method Is Preferred In Determining Attorneys' Fee Awards ..................................................................................................6

        1. The Requested Fees Represent 35% Of The Common Benefit Provided To The Class—Is Consistent With The Market And The Range Found Reasonable By The Courts.............................................................................7

    C. The Requested Fees Are Also Appropriate Under The Lodestar Method...............9

IV. THE REQUESTED INCENTIVE AWARD TO THE REPRESENTATIVE PLAINTIFF IS PROPER ...............................................................................11

V. CONCLUSION................................................................................................12

# TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1983)......................................................................................................6

*Fox v. Vice*,
131 S. Ct. 2205 (2011)................................................................................................10

*Hensley v. Eckhart*,
461 U.S. 424 (1983)....................................................................................................10

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*,
743 F.3d 243 (7th Cir. 2014) ...................................................................................9, 10

*Connolly v. Nat'l Sch. Bus. Serv., Inc.*,
177 F.3d 593 (7th Cir.1999) ........................................................................................11

*Cook v. Niedert,*
142 F.3d 1004 (7th Cir. 1998) .....................................................................................11

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) .....................................................................................6, 8

*Gastineau v. Wright,*
592 F.3d 747 (7th Cir. 2010) .................................................................................10, 11

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) .......................................................................................11

*In re Sw. Airlines Voucher Litig.*,
No. 13-3264, 2015 WL 4939676, – F.3d – (7th Cir. Aug. 20, 2015) ............................6

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) .....................................................................................6, 7

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986) ........................................................................................8

*Matter of Cont'l Illinois Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ........................................................................................6

*Montgomery v. Aetna Plywood, Inc.*,
231 F.3d 399 (7th Cir. 2000) ........................................................................................7

*Pearson v. NBTY, Inc.*,
772 F.3d 778 (7th Cir. 2014) ..................................................................................................8

*Skelton v. Gen. Motors Corp.*,
860 F.2d 250 (7th Cir. 1988) ................................................................................................11

*Sutton v. Bernard*,
504 F.3d 688 (7th Cir. 2007) ..................................................................................................7

**UNITED STATES DISTRICT COURT CASES**

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
00-584-DRH, 2004 WL 287902 (S.D. Ill. Jan. 22, 2004)........................................................8

*CE Design Ltd. v. Cy's Crab House N., Inc.*,
No. 07-cv-05456 (N.D. Ill. Oct. 27, 2011) .............................................................................9

*CE Design Ltd. v. Exterior Sys., Inc.*,
No. 07-cv-00066 (N.D. Ill. Dec. 6, 2007)...............................................................................9

*Cummings v Sallie Mae*,
No. 12-cv-9984 (N.D. Ill. May 30, 2014) ...............................................................................8

*Chapa IV v. Trugreen, Inc.*,
No. 13-cv-3957 (N.D. Ill. Jan. 27, 2015) ................................................................................8

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
No. 11-CV-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015).............................................9

*Desai v. ADT Sec. Servs.*,
No. 11-cv-01925 (N.D. Ill. June 21, 2013).............................................................................9

*Gress v. Premier Healthcare Exchange, Inc.*,
No. 14-cv-501 (N.D. Ill. Sept. 11, 2015) ................................................................................9

*G.M. Sign Inc. v. Finish Thompson, Inc.*,
No. 07-cv-05953 (N.D. Ill. Nov. 1, 2010) ..............................................................................9

*Hanley v. Fifth Third Bank*,
No. 12-cv-01612 (N.D. Ill. Dec. 23, 2013).............................................................................8

*Hinman v. M & M Rental Ctr., Inc.*,
No. 06-cv-01156 (N.D. Ill. Oct. 6, 2009) ...............................................................................9

*Holtzman v. CCH*,
No. 07-cv-07033 (N.D. Ill. Sept. 30, 2009) ............................................................................9

*In re Bayou Sorrel Class Action*,
6:04-cv-1101, 2006 WL 3230771 (W.D. La. Oct. 31, 2006) ......................................................... 7

*In re Cenco, Inc. Sec. Litig.*,
519 F. Supp. 322 (N.D. Ill. 1981) ................................................................................................ 11

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) ................................................................................................... 11

*In re Sw. Airlines Voucher Litig.*,
2013 WL 5497275 (N.D. Ill. Oct. 3, 2013) ................................................................................. 11

*Martin v. Dun & Bradstreet, Inc.*,
No. 12-cv-00215 (N.D. Ill. Jan. 16, 2014) .................................................................................... 8

*Meyenburg v. Exxon Mobil Corp.*,
3:05-cv-15-DGW, 2006 WL 2191422 (S.D. Ill. July 31, 2006) .................................................. 8

*Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*,
No. 08-cv-05959 (N.D. Ill. Dec. 21, 2011) ................................................................................... 9

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
97-cv-7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ........................................................... 7

*Spicer v. Chi. Bd. Options Exch., Inc.*,
844 F. Supp. 1226 (N.D. Ill. 1993) ............................................................................................. 11

*Summers v. UAL Corp. ESOP Comm.*,
03-cv-1537, 2005 WL 3159450 (N.D. Ill. Nov. 22, 2005) .......................................................... 8

*Will v. Gen. Dynamics Corp.*,
06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ........................................................ 8

**STATUTES AND FEDERAL RULES**

47 U.S.C. § 227 ................................................................................................................... *passim*

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

**MISCELLANEOUS**

Richard Posner, *Economic Analysis of Law* § 21.9 (3d ed. 1986) ................................................ 8

Willging, Hooper & Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules* (Fed. Judicial Center 1996) ................... 9

Pursuant to Fed. R. Civ. P. 23 and this Court's July 9, 2015 Preliminary Approval Order (Dkt. No. 82), Plaintiff Advanced Arlington Sports Medicine Center Ltd. ("Plaintiff"), by its counsel, respectfully submits the following Motion for Attorneys' Fees, Costs, and Incentive Award.

## I.  INTRODUCTION

Class Counsel seeks the Court's approval of an award of attorneys' fees in the amount of $283,675, the payment of costs in the amount of $7,944.11, and an incentive award to the class representative Plaintiff in the amount of $10,000. The award sought here is justified as the Settlement Fund[1] achieved through Class Counsel's efforts is an all-in, non-reversionary **$1,000,000** fund. The fee request comprises only 35% of the Settlement Fund *after* notice and administration costs are first deducted, precisely as the Seventh Circuit dictates.

Moreover, the Court need not apply any sort of lodestar multiplier in approving the requested award. After two years of litigation, as detailed below with Counsel's time records and supporting affidavits, Class Counsel's base lodestar time is $338,183. This means the fee award here would result in a *negative* multiplier—well below the Seventh Circuit standards in which (positive) multipliers are readily utilized. Accordingly, as further demonstrated below, Class Counsel and Plaintiff respectfully request that this Court grant the request for attorneys' fees, costs, and incentive awards.

## II.  PROCEDURAL HISTORY

On April 25, 2013, North Suburban Chiropractic Clinic, Ltd. ("Former Plaintiff") filed a class action complaint against Defendant Zydus Pharmaceuticals (USA), Inc. ("Zydus") in the United States District Court for the Northern District of Illinois. On behalf of itself and a

---

[1] Unless otherwise stated herein, capitalized terms shall have the same meaning as provided in the Parties' Settlement Agreement, attached as Exhibit 1 to Dkt. No. 63.

-1-

proposed class of all individuals or entities in the United States who were sent facsimile advertisements from or on behalf of Zydus. Former Plaintiff alleged that Zydus sent (or had sent on its behalf) facsimile advertisements to unwilling recipients in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). (*See generally* Dkt. No. 1.)[2]

Zydus moved for an extension of time to answer or otherwise plead on May 3, 2013, June 17, 2013, and July 8, 2013. (Dkt. Nos. 9, 14, 19.) This Court granted each motion. (Dkt. Nos. 12, 16, 21.) On July 26, 2013, Zydus filed a Motion To Dismiss under Rule 12(b)(6) on grounds that the faxes were not "unsolicited advertisements" under 47 U.S.C. § 227(b)(1)(c) and that the faxes were transactional in purpose. (Dkt. No. 22.) On July 31, 2013, this Court denied that motion. (Dkt. No 25.)

On August 14, 2013, Zydus filed its Answer, denying the substance of the allegations and raising several affirmative defenses, including, but not limited to, Former Plaintiff consented to receiving the faxes, the faxes were informational and transactional, and Former Plaintiff lacks standing. (Dkt. No. 27.) In August 2013, counsel for Former Plaintiff and Zydus began settlement negotiations through numerous telephonic conferences and written correspondence. (*See* Dkt. No. 46.) During the status conference on October 30, 2013, counsel for Former Plaintiff and Zydus informed this Court that they were exploring settlement opportunities. Accordingly, a new status was set for December 4, 2013. Former Plaintiff and Zydus thereafter increased their efforts to settle the case. (*See* Dkt. No. 46.)

In November 2013, Former Plaintiff issued discovery requests to Zydus, including interrogatories and requests for production. Zydus subsequently provided written responses and produced responsive documents. (*See* Dkt. No. 46.) On December 4, 2013, Former Plaintiff and

---

[2] Unless otherwise stated, all references to Dkt. entries relate to Case No. 13-cv-3105.

Zydus represented to the Court that settlement negotiations were progressing. This Court set a new status hearing for January 22, 2014. (Dkt. No. 33.)

On January 19, 2014, Former Plaintiff moved to substitute Advanced Arlington Sports Medicine Center as the party-plaintiff in this class action, and to amend the complaint accordingly. (Dkt. No. 35.) This Court granted the motion on January 22, 2014. (Dkt. No. 39.)

Settlement negotiations meanwhile continued until Plaintiff's and Zydus' efforts culminated in a final settlement conference. (*See* Siprut Aff. ¶10.) After nearly five months of settlement discussions, Plaintiff and Zydus finally agreed upon all key terms of the settlement. (*Id.*) Defendants Communications Media, Inc. ("CMI"), Compas, Inc. ("Compas"), The Hibbert Group ("Hibbert"), and SK&A Information Services, Inc. ("SK&A") were not included in the settlement, because Plaintiff intended to file a separate action to procure class relief from these entities. (*See* Dkt. No. 46.)

On February 21, 2014, Plaintiff filed its Motion for Preliminary Approval of Class Action Settlement. (Dkt. No. 40.) The Court granted Plaintiff's motion on March 5, 2014. (Dkt. No. 41.) Thereafter, the Court entered a Preliminary Approval Order on March 14, 2014 and appointed Joseph J. Siprut of Siprut PC as Class Counsel and Plaintiff as Class Representative. (Dkt. No. 43.) On or before April 4, 2014, the settlement administrator mailed post-card notice to the Settlement Class. (Dkt. No. 46-1.) No Settlement Class Member opted-out or objected, and no state attorney general objected. (*Id.*) Plaintiff filed its Motion For Final Approval of Class Action Settlement and its Motion For Attorneys' Fees, Costs, And Incentive Award on July 9, 2014. (Dkt. Nos. 46, 47.) Judge Grady held a Final Fairness Hearing on July 24, 2014, but took medical leave before issuing a ruling. (Dkt. No. 49.) The case was then reassigned to this Court. (Dkt. No. 51.)

Because several months had passed without final approval on the settlement with Zydus, Plaintiff filed its Class Action Complaint against CMI, Compas, and Hibbert on December 1, 2014. (Case No. 14-cv-9529, Dkt. No. 1.) The hearing on the Motion For Final Approval Of Class Action Settlement and the Motion For Attorneys' Fees, Costs, and Incentive Award occurred on December 17, 2014. This Court ordered Plaintiff and Zydus to file a revised Motion For Final Approval Of Class Action Settlement by December 31, 2014. (Dkt. No. 55.)

Following the hearing on December 17, Plaintiff and Zydus engaged in substantive negotiations intended to proactively address concerns raised by this Court at the December 17, 2014 hearing. (*See* Siprut Aff. ¶18.) On February 2, 2015, Plaintiff voluntarily dismissed SK&A without prejudice from Case No. 14-cv-9529.[3] (Case No. 14-cv-9529, Dkt. No. 9.) On February 5, 2015, CMI and Compas moved to consolidate the case pending against them with the case against Zydus. (Case No. 14-cv-9529, Dkt. No. 14.) The Court granted the motion, thereby consolidating Case No. 14-cv-9529 with Case No. 13-cv-3105. (*Id.* at Dkt. No. 18.) Thereafter, the Parties held several conference calls or meetings discussing a potential framework for a new, global settlement. (*See* Siprut Aff. ¶19.)

On May 26, 2015, the Parties engaged in a full-day of mediation before Magistrate Judge (Ret.) Morton Denlow at JAMS, 71 S. Wacker Drive, Suite 3090, Chicago, IL 60606. (*Id.* ¶26.) Prior to the mediation, the Parties exchanged written statements and documents supporting their respective positions. (*Id.*) After nearly ten-hours of arms-length negotiations, the Parties were successful in reaching an agreement on the materials terms of a new settlement structure. (*Id.*)

---

[3] Plaintiff named SK&A as a co-defendant in its Complaint against CMI. Subsequently, Plaintiff and SK&A engaged in confidential communications concerning SK&A's alleged involvement. Based on those communications, Plaintiff concluded that SK&A did not have any involvement in the transmission of the fax at issue and voluntarily dismissed SK&A without prejudice. (Case No. 14-cv-9529 at Dkt. No. 9.)

After many exchanges of drafts and edits, the Parties were finally able to agree to the form and content of the Settlement Agreement in June 2015. On July 6, 2015, Plaintiff filed a Motion For Preliminary Approval Of Class Action Settlement. (Dkt. No. 79.) On July 9, 2015, this Court entered an Order granting preliminary approval of the Settlement. (Dkt. No. 82.)

## III.  CLASS COUNSEL'S FEE REQUEST

### A. Class Counsel Performed Substantial Work On Behalf Of The Class.

Class Counsel expended substantial effort in achieving this settlement on behalf of Class members. Defendants' attorneys mounted a skilled defense, from the pleadings stage through settlement. The hours Class Counsel expended in battling Defendants total 765.3 hours (Siprut Aff. ¶33) and include the following:

- **Pre-Complaint Factual Investigation**. Class Counsel began conducting a factual and legal investigation in 2013, starting with an analysis of the facsimile advertisement issued on Zydus' behalf.

- **Legal Investigation**. With the initial factual investigation ongoing, Class Counsel investigated the litigation landscape. In addition, Class Counsel researched: (1) choice of law issues; (2) the appropriate venue and potentially applicable statutes, regulations, and common law claims under Illinois and various other states' laws; and (3) the elements and potential defenses for each of the proposed claims. Once the initial factual and legal research had been completed, Class Counsel began: (1) formulating the TCPA claims; (2) drafting, preparing, and filing the Complaint; and (3) engaging in correspondence with clients regarding the complaint and the case in general.

- **Motion Practice and Discovery**. Early on in the case, Zydus filed a motion to dismiss based on its argument that the facsimile at issue was not an advertisement. Class Counsel researched and analyzed these issues and began drafting a brief, before the Court ultimately denied the Motion. Class Counsel also significantly researched class certification issues (and potential Zydus defenses to class certification), given that class certification would have been the "make or break" point for a case of this nature.

- **Interactions With Clients and the Members of the Class**. Class Counsel has received various inquiries from Settlement Class Members and members of the old settlement, which has required Class Counsel to take the time to communicate with each individual, collect data, and keep consumers apprised of any progress in the case.

- **Settlement**. Class Counsel not only conducted substantial and protracted settlement negotiations with Zydus under the old settlement, but engaged in even more vigorous discussions with all Defendants regarding this new Settlement. Class Counsel researched and drafted memoranda regarding potential settlement structures, analyzed settlements in similar cases, reviewed materials obtained through informal discovery, and regularly engaged in telephonic conferences and email exchanges. Class Counsel also engaged in a full day of mediation with Retired Judge Morton Denlow. After hours of negotiations and only with Judge Denlow's assistance were the Parties able to reach the Settlement here which provides immediate and direct benefits to the Class.

**B. The Percentage Of The Recovery Method Is Preferred In Determining Attorneys' Fee Awards**.

As recently stated by the Seventh Circuit, "Under the 'common fund' doctrine, an attorney who recovers a common fund for the benefit of a class is entitled to a reasonable portion of the fund that is *made available* to the class rather than the amount actually *claimed by* the class." *In re Sw. Airlines Voucher Litig.*, No. 13-3264, – F.3d –, 2015 WL 4939676, at *5 (7th Cir. Aug. 20, 2015) (emphasis original); *see Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole[.]").

The Seventh Circuit has strongly endorsed the percentage of the recovery benefit method as the best means for calculating class counsels' attorneys' fees in common fund cases. *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (instructing district courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time") (collecting cases); *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund . . . in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis.") (internal citations omitted); *Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d

566, 572 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992) ("The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client. . . . [I]n large commercial litigation with prospects of multimillion dollar recoveries the percentage frequently is tapered—it might be 33 percent of the first million, 25 percent of the next million, and so on down."). "Given the issues likely to arise in computing a lodestar, courts across the country, both federal and state, are retreating from a lodestar analysis in favor of setting common benefit fees at a percentage of the benefit secured . . . ." *In re Bayou Sorrel Class Action*, 6:04-cv-1101, 2006 WL 3230771, at *3 (W.D. La. Oct. 31, 2006) (collecting cases).

As demonstrated directly below, under the percentage of recovery method, the fee request here is entirely supported under presumptive benchmarks used in the Seventh Circuit.

    **1. The Requested Fees Represent 35% Of The Common Benefit Provided To The Class.**

In deciding the appropriate fee under the percentage-of-recovery method, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) (*quoting In re Synthroid*, 264 F.3d at 718); *see Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000) ("[T]he measure of what is reasonable [as an attorney fee] is what an attorney would receive from a paying client in a similar case.").

The fee agreements between Class Counsel and Plaintiff are contingent in nature. (*See* Siprut Aff. ¶2.) Courts have found that in commercial, non-class litigation, attorneys regularly negotiate contingent fee arrangements, for a fee of between 33.3% and 40% of the recovery. *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 97-cv-7694, 2001 WL 1568856, at *4 (N.D.

Ill. Dec. 10, 2001) (citing *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986); *see* Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986) (explaining established practice to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases).

The same is equally true in the class action context, including in the Seventh Circuit. *E.g.*, *Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 00-584-DRH, 2004 WL 287902, at *2 (S.D. Ill. Jan. 22, 2004) (finding that 29% of the gross settlement is a reasonable fee award); *Gaskill*, 160 F.3d at 362-3 (noting that typical contingency fees are between 33% and 40% and that "[s]ome courts have suggested 25% as a benchmark figure for a contingent-fee award in a class action"); *Will v. Gen. Dynamics Corp.*, 06-698-GPM, 2010 WL 4818174, at *2 (S.D. Ill. Nov. 22, 2010) (stating that, where the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, "the normal rate of compensation in the market" is "33.33% of the common fund recovered"); *Summers v. UAL Corp. ESOP Comm.*, 03-cv-1537, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) (finding that attorneys' fees amounting to 16% of the gross settlement "is clearly within the range of what has been deemed reasonable by the Seventh Circuit") (citing *In re Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d at 572); *Meyenburg v. Exxon Mobil Corp.*, 3:05-cv-15-DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation.");[4] *see Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (stating that in

---

[4] *See also Chapa IV v. Trugreen, Inc.*, No. 13-cv-3957, Dkt. No. 50 (N.D. Ill. Jan. 27, 2015) (Leinenweber, J.) (awarding 1/3 of the settlement fund as attorneys' fees); *Martin v. Dun & Bradstreet, Inc.*, No. 12-cv-00215, Dkt. 66 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (awarding one third fee payment of distributed fund); *Cummings v Sallie Mae*, No. 12-cv-9984, Dkt. 91 (N.D. Ill. May 30, 2014) (Gottschall, J.) (awarding one-third of the common fund for fees); *Hanley v.*

consumer class actions, attorneys' fees should not exceed 50% "of the total amount of money going to class members and their counsel"). A Federal Judicial Center Study further supports the norm in attorney fee awards, finding that, in federal class actions, median attorney fee awards were in the range of 27% to 30%. Willging, Hooper & Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*, at 69 (Fed. Judicial Center 1996).

Here, Plaintiff is requesting 35% of the Fund in attorneys' fees and costs *after* notice and administration expenses and the incentive award are deducted (approximately $283,675).[5]

## C. The Requested Fees Are Also Appropriate Under the Lodestar Method.

Given the existence of a common fund, the need to award fees under the lodestar method is "not warranted." *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015) (citing *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014)); *see Gress v. Premier Healthcare Exchange,*

---

*Fifth Third Bank*, No. 12-cv-01612, Dkt. No. 86 (N.D. Ill. Dec. 23, 2013) (Castillo, J.) (awarding one third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 11-cv-01925, Dkt. 243 (N.D. Ill. June 21, 2013) (Bucklo, J.) (approving payment of one-third of common fund); *Paldo Sign & Display Co. v. Topsail Sportswear*, *Inc.*, No. 08-cv-05959, Dkt. 116 (N.D. Ill. Dec. 21, 2011 (Kennelly, J.) (approving one-third of the settlement fund plus expenses); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 07-cv-05456, Dkt. 424 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (same); *Saf-TGard Int'l, Inc., v. Seiko Corp. of Am.*, No. 09-cv-00776, Dkt. No. 100 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (same); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-cv-05953, Dkt. No. 146 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (same); *Hinman v. M & M Rental Ctr., Inc.*, No. 06-cv-01156, Dkt. No. 225 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (same); *Holtzman v. CCH*, No. 07-cv-07033, Dkt. 33 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 07-cv-00066, Dkt. No. 39 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (same).

[5] Notice and administration expenses are estimated at $184,200 to $189,500. (*See* Siprut Aff. ¶43.). For present purposes, we have conservatively assumed the high end of that range and thus utilized $189,500 as the data point for notice and administration costs. We have accordingly deducted this amount from the $1 Million Settlement Fund before applying the 35% contingency benchmark.

*Inc.*, No. 14-cv-501, Dkt. No. 94 (N.D. Ill. Sept. 11, 2015) (granting final approval and awarding fees under the percentage method, without requiring a lodestar cross-check).

Nevertheless, a lodestar calculation supports the request, and underscores the reasonableness of the Settlement. *See Americana Art China*, 743 F.3d at 247-48 ("[W]e are of the opinion that both the lodestar approach and the percentage approach may be appropriate in determining attorney's fee awards, depending on the circumstances . . . The decision whether to use a percentage method or a lodestar method remains in the discretion of the district court.") (quoting *Florin*, 34 F.3d at 566). To determine the reasonableness of attorneys' fees under the lodestar method, the first step is to calculate a base lodestar amount by "multiplying a reasonable hourly rate by the number of hours reasonably expended." *Gastineau v. Wright,* 592 F.3d 747, 748 (7th Cir. 2010) (citing *Hensley v. Eckhart*, 461 U.S. 424, 433-37 (1983)).

Although the Supreme Court has explicitly held that "trial courts need not, and indeed should not, become green-eyeshade accountants" when reviewing time records, *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011) (internal quotations omitted), Class Counsel has supplied its detailed billing records to further support the fee request. (*See generally* Exhibit R to the Siprut Aff.)

To date, six attorneys at Class Counsel's firm have spent 765.3 hours collectively in prosecuting this action for a total lodestar amount of $338,183 (Siprut Aff. ¶¶26-33.) In addition, Class Counsel has incurred $7,944.11 in unreimbursed costs to date. (*Id.* ¶34.) As detailed in the Affidavit of Joseph Siprut, the hourly rates utilized by Siprut PC's attorneys and legal staff (1) have been previously approved by courts throughout the country and this district; (2) are the same hourly rates charged by Siprut PC to outside clients; and (3) are demonstrably *lower* than the median hourly rate in the legal market based on the hourly rates charged in other cases by attorneys with similar experience, skill and reputation. (*Id*. ¶¶35-41.)

Because Class Counsel's lodestar exceeds its requested attorneys' fees, the Court need *not* use a multiplier. The Court need only award 84% of Class Counsel's lodestar to reach the sum requested here.[6]

## IV. THE REQUESTED INCENTIVE AWARD TO THE REPRESENTATIVE PLAINTIFF IS PROPER.

Finally, Plaintiff requests that the named plaintiff and class representative receive an incentive award of $10,000, which was the result of a negotiated compromise. The rationale for awarding incentive payments to named plaintiffs is that they should be compensated for the expense or risk they have incurred in conferring a benefit on other members of the class. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005). Incentive awards are appropriate "to encourage or induce an individual to participate" in a class action law suit. *Id.*

Moreover, and similar to the fee request, comparisons to incentive awards in other similar class action settlements further underscore that this amount is reasonable and fair. *See, e.g.*, *In re Sw. Airlines Voucher Litig.*, 2013 WL 5497275, at *1 (N.D. Ill. Oct. 3, 2013) (class representative receiving a $15,000 incentive award) *amended on other grounds,* 2014 WL 2809016 (N.D. Ill. June 20, 2014); *Cook*, 142 F.3d at 1016 (awarding $25,000 incentive award); *Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) ($30,000

---

[6] The base lodestar is typically adjusted using a multiplier to take into account various factors in the litigation that affect the reasonableness of the requested fees. *E.g.*, *Cook v. Niedert,* 142 F.3d 1004, 1015 (7th Cir. 1998); *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 255 (7th Cir. 1988). These factors include "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Gastineau*, 592 F.3d at 748. When applying a multiplier to the base lodestar amount, courts should also consider the risk plaintiff's counsel assumes in recovering nothing. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975-76 (7th Cir. 1991) (remanding case for recalculation of attorneys' fees because the trial court failed to award a risk multiplier). Multipliers can range from 2 to 4 or even higher. *In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322 (N.D. Ill. 1981) (applying a lodestar multiplier of 4 to lead counsel's lodestar and 2 to other counsels' lodestar). "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Id.* (citing *Connolly v. Nat'l Sch. Bus. Serv., Inc.*, 177 F.3d 593, 597 (7th Cir.1999)).

awarded from settlement fund of $10 million).

In this case, the class representative plaintiff has contributed substantially to this litigation and has invested considerable time, at its own expense, to do so. Plaintiff aided our initial investigation of the claims, and worked to provide a variety of documentation (initially at our request, and then additionally as the Parties exchanged information) to support the asserted claims on behalf of the Class. Plaintiff also spent substantial time with us on the phone discussing the case and its progress, and particularly the scope of the settlement eventually achieved. (Siprut Aff. ¶3.)

### V.  CONCLUSION

For the reasons set forth above, Class Counsel respectfully suggests that attorneys' fees in the amount of $283,675, the payment of costs in the amount of $7,944.11, and an incentive award to the class representative Plaintiff in the amount of $10,000 are fair, appropriate, and reasonable, and respectfully requests the Court enter an Order approving these amounts.

Dated: September 14, 2015

Respectfully submitted,

By: *s/ Joseph J. Siprut*

Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.241.1260

*Counsel for Plaintiff
and the Settlement Class*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiff's Motion For Attorneys' Fees, Costs And Incentive Award** was filed this 14th day of September 2015 via the electronic filing system of the Northern District of Illinois, which will automatically serve all counsel of record.

                                                            */s/ Joseph J. Siprut*

4821-5234-2823, V. 1